IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION No.: 5:11CV17-RLV

| | |
|---|---|
| **Shurtape Technologies, LLC,** ) | |
| **ShurTech Brands, LLC,** ) | |
|     **Plaintiff,** ) | |
| ) | |
|     vs. ) | **Order Denying Motion To Stay** |
| ) | **Pending** *Inter Partes* **Reexamination** |
| **3M Company,** ) | |
|     **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court upon Defendant 3M Company's ("3M") Motion To Stay Pending *Inter Partes* Reexamination of the Patent-In-Suit, U.S. Patent No. 6,828,008 ('008 Patent). (Docs. 68-69, 71). Plaintiffs Shurtape Technologies, LLC, and ShurTech Brands, LLC ("Shurtape") oppose a stay. (Doc. 70).

## I.

Shurtape and 3M are direct competitors in the painters' tape market. Shurtape's product is FROGTAPE® painter's tape with PAINTBLOCK® and 3M's competing product is a painter's tape with EDGE-BLOCK.

This litigation commenced on February 22, 2011, when Shurtape filed a complaint against 3M alleging patent infringement, trademark infringement, false designation of origin, and unfair and deceptive conduct. (Doc. 1 / Complaint). In its complaint, Shurtape asserted its '008 Patent as well as its registered trademarks, Trademark Registration No. 3,234,253 (for "Paint Block" or "Paintblock") and Trademark Registration No. 3,886,479 (for the phrase "Keeps Paint Out. Keeps Lines Sharp."), as valuable intellectual property interests enforceable against 3M. (Id.)

3M answered and asserted multiple counterclaims against Shurtape seeking a declaratory judgment that 3M is not infringing upon the patent rights of Shurtape, that each claim within

1

Shurtape's '008 Patent is invalid, and that Shurtape's trademarks cannot be enforced.[1] (Doc. 24 / Answer & Counterclaims I - VI).

After extensive briefing and oral argument, Claim Construction was decided on July 16, 2012. (Doc. 59). Shortly thereafter, on August 2, 2012, Shurtape filed an Amended or "First Supplemental Complaint." (Doc. 62). The Supplemental Complaint informed of two new trademark registrations approved by the United States Patent and Trademark Office ("USPTO") in December 2011.[2] (Suppl. Complaint, ¶ 26). Both of these new registered trademarks are grouped with the '253 trademark and referrred to by Shurtape as the "PAINTBLOCK® Trademarks." (Suppl. Complaint)

On August 17, 2012, 3M amended its Answer & Counterclaims. (Doc. 63). 3M's Amended Counterclaims include corresponding challenges to the enforceability of Shurtape's new trademark registrations. (Am. Counterclaims, ¶¶30-33).

A Utility Patent Pretrial Order and Case Management Plan issued on October 30, 2012, addressing post-claim construction obligations and deadlines. (Doc. 67).

3M applied with the USPTO for *Inter Partes* Reexamination of the '008 Patent. 3M's request was granted on November 27, 2012. (Doc. 69 / Exh. A). As a result, the USPTO will reconsider whether Shurtape's '008 patented claims remain subject to the protections afforded by patentability.[3]

---

[1] More specifically, 3M alleges that Shurtape's trademarks are "merely descriptive," have not acquired secondary meaning, and are subject to cancellation.

[2] On December 20, 2011, the USPTO issued Registration No. 4,078,689 (for PAINTBLOCK®) and No. 4,078,845 (for the word "PAINTBLOCK" in stylized letters superimposed on a design of a paintbrush stroke extending to the right of the words). (Suppl. Complaint, Exh. B)

[3] *Inter Partes* Reexamination means just what it says – reexamination of a patent by the USPTO in light of prior art. Title 35, United States Code, Subsection 311(b) reads:

3M now seeks a stay of the case in its entirety pending reexamination. Alternatively, 3M requests that this Court stay Shurtape's first cause of action related to the '008 Patent.

**II.**

Determining whether to grant a stay pending the USPTO's reexamination "is soundly within the court's discretion." *Borgwarner, Inc. v. Honeywell Int'l, Inc.*, 2008 WL 2704818, *1 (W.D.N.C. July 7, 2008) (internal citations omitted). Courts considering such a stay consider several factors:

> "(1) the stage of the litigation, including whether discovery is or will be almost complete and whether the matter has been scheduled for trial;
> (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and,
> (3) whether a stay will simplify the issues in questions and streamline the trial, thereby reducing the burden of litigation on the parties and on the court."

*Borgwarner, Inc.*, 2008 WL 2704818, *1 (denying motion to stay pending *ex parte* reexamination where action had been pending ten months, Markman issues were ripe, there was no indication that reexamination would significantly streamline litigation, USPTO had not issued any Office Action on the Merits, and trial judge found that accused infringer had timed reexamination request so as to provide itself a tactical advantage). With respect to USPTO reexamination proceedings, a liberal policy exists in favor of granting motions to stay. *Borgwarner, Inc.*, 2008 WL 2704818, *1.

---

(b) Scope.--A petitioner in an *inter partes* review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications.

35 U.S.C. § 311(b)(2013).

**III.**

Having considered the relevant factors in light of the record before it, the Court finds that imposition of a stay pending *inter partes* reexamination is not justified.

First, the stage of the litigation does not weigh heavily in favor of either party. This litigation has been pending two years and is in its second (or post-claim construction) phase. The parties have conducted document discovery, answered interrogatories, exchanged infringement and validity contentions, conducted eight depositions, issued third-party subpoenas, conducted one (of a possible two) plant inspections, and retained expert witnesses. In addition, the claims of the '008 Patent have been construed by the Court. Although much work has been done, significant work remains, including deposing expert witnesses, the submission of and ruling on dispositive / *Daubert* motions, and mediation. However, all indications are that this Court should be able to dispose of *all* of the parties' claims and counterclaims during 2013 or early 2014, whether disposition occurs at summary judgment or via jury trial.[4] For this reason, the posture of the case militates against a stay.

Secondly, the likelihood of undue prejudice to Shurtape is most troubling. According to Shurtape, if a stay is permitted, Shurtape will be disadvantaged since 3M has the resources to effectively cripple Shurtape in the market. *See generally, Tesco Corp. v. Weatherford Int'l, Inc.*, 772 F.Supp.2d 755, 762 (S.D.Tex. 2010)(denying stay pending *inter partes* reexamination where parties were direct competitors and stay would likely prejudice non-movant); *Cooper Techs.*, 2008 WL 906315, *1 (where parties are direct competitors, stay would prejudice patent owner). Shurtape's Stephen Shuford, declares that 3M holds the #1 position in the painter's tape market

---

[4] The case has not been placed on a trial term but is designated as "trial ready" on or around October 10, 2013. (Doc. 67). The exact trial date will depend, in part, upon how quickly dispositive motions and any *Daubert* motions can be resolved. The undersigned expects this matter to proceed to trial during either the November 2013 Term or the January 2014 Term.

while Shurtape holds the #2 position. (Shurtape Opp'n, Exh. C / Shuford Decl., ¶ 3) 3M, with its size advantage, has the ability to undercut Shurtape on price. (Shuford Decl., ¶¶10, 11) Shurtape presents evidence demonstrating that it has already lost approximately two-thirds of its previous shelf space to 3M in all of the Lowes' Home Improvement Stores and The Home Depot Stores. (Shuford Decl., ¶¶ 7-9). This evidence supports Shurtape's argument that a recovery of monetary damages years from now (after reexamination and after lifting of a stay) may not fully compensate Shurtape for the alleged infringement. *See e.g., Avago Techs. Fiber IP (Singapore) PTE. Ltd. v. IPtronics, Inc.*, 2011 WL 3267768, * 5 (N.D.Cal. July 28, 2011) (recognizing intangible harms in the marketplace caused by infringement among competitors). As far as the length of time reexamination might require, the parties present competing figures and statistics.[5] (The same is true with respect to the likely outcome of reexamination.) 3M contends that reexamination is proceeding "significantly faster than normal" because the First Action on the Merits ("FAOM") has already issued.[6] Suffice it to say, patent reexamination is tedious work and is sure to take longer than this Court would prefer. The Court must also consider Shurtape's desire to prosecute its other causes of action as quickly as possible, particularly its allegations of trademark infringement.[7] *See Gladish v. Tyco Toys, Inc.*, 1993 WL 625509, *2 (E.D.Cal. September 15, 1993) ("issuance of a stay pending reexamination would not serve Congress'

---

[5] U.S. District Judge Martin Reidinger observes the same predicament and notes that the parties draw "diametrically opposed inferences from the same USPTO statistics." *Borgwarner, Inc.,* 2008 WL 2704818, *2 (W.D.N.C. July 7, 2008).

[6] 3M contends that the FAOM often lags behind the reexamination decisions. Because the FAOM issued the same day the USPTO agreed to reexamination, 3M is encouraged that reexamination will not require as much time as Shurtape suggests. (3M Reply, 8). In an attempt to soften the stinging effects of a stay, 3M represents that it would "stipulate to lifting the stay if the PTO issues a right of appeal notice allowing the asserted claims." (3M Reply, 8-9).

[7] Of Plaintiff's six causes of action, only one alleges patent infringement. The other five claims allege trademark infringement, false designation of origin, and unfair and deceptive trade practice.

intent of simplifying the issues and reducing the complexity of trial" where some issues would still require litigation post-reexamination; "[a]fter the reexamination, the parties would be right back in this court.")  In terms of 3M's request for reexamination constituting "a tactical move for delay," the undersigned is not persuaded that 3M's primary objective is to delay.[8]  However, delay in this instance clearly favors 3M - not Shurtape.  (3M Reply, 9-10).  Moreover, Shurtape's failure to seek preliminary injunctive relief in the instant litigation, a factor which some courts have found weighs against imposition of a stay, is not determinative.  *See e.g., EI Du Pont De Nemours & Co. v. MacDermid Printing Solutions, LLC*, 2012 WL 2995182, *4 (D.N.J. July 23, 2012).  In sum, the potential for undue prejudice to Shurtape is great such that this factor strongly favors denying 3M's motion to stay.

Third, the impact of *inter partes* reexamination on this case is unknown (and may not be known for years). 3M suggests that *none* of Shurtape's asserted patent claims will survive reexamination and that the litigation will be streamlined.  Shurtape argues that such an outcome is almost *never* the case.  The undersigned does not endeavor to predict the outcome of reexamination.  Even the significance of the USPTO's decision to grant reexamination is hotly debated by the parties.  3M suggests that by granting the request for reexamination, the USPTO necessarily had to find that 3M has demonstrated "a reasonable likelihood that it will prevail."  (3M Reply, 3).  3M is correct that the USPTO must view the application as likely to succeed *on at least one claim*.[9]  Shurtape points to the $7,000+ in fees the USPTO receives for agreeing to

---

[8] Shurtape makes the point that 3M relies on four primary prior art references that have all been known to 3M since at least October 2011. (Shurtape Opp'n, 4, 11).  However, 3M justifies its timing in part upon the Court's broad claim construction – a construction 3M opposed.  3M apparently banked on prevailing with its more narrow proposed claim construction.

[9] A reasonable likelihood that the movant will prevail on at least one of the claims is the threshold requirement to *inter partes* reexamination.  Section 314 provides in part:

conduct reexamination as motivation.[10] (Shurtape Opp'n, 4-5). 3M argues that, in this particular case, aside from granting reexamination, the USPTO's initial action with reference to the '008 Patent represents an extraordinary situation to be distinguished from a "mere garden-variety rejection." As summarized by 3M, the USPTO, within a 31-page decision, rejected Shurtape's patent claims "on *twenty* different grounds, based on *seven* different prior art references, either alone or in combination." (3M Reply, 2). Nonetheless, under any reexamination scenario, reexamination only addresses patentability and would leave certain theories of invalidity and questions of infringement for subsequent litigation by this Court. *See Pentair Water Pool and Spa, Inc. v. Hayward Indus., Inc.,* 2012 WL 6608619, * 3 (E.D.N.C. December 18, 2012) (denying motion to stay pending *inter partes* reexamination where accused infringer did not request reexamination of all claims). Specifically, Shurtape explains that validity considerations during reexamination are not all-inclusive since the USPTO is not able to hear evidence relating to *commercial product* prior art (as opposed to prior art patents or publications) or 35 U.S.C. § 112. (Shurtape Opp'n, 6, 9). In addition, upon a finding of infringement, willfulness of infringement as well as damages would remain for the Court. (Shurtape Opp'n, 9). Presuming the patent-related issues are, in fact, streamlined as a result of reexamination, Shurtape has five (5) other causes of action. Unless reexamination of the '008 Patent precipitated a global settlement, a stay imparts *no* advantage for the non-patent aspects of the case. This factor

---

(a) Threshold.--The Director may not authorize an *inter partes* review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

35 U.S.C. § 314(a)(2012).

[10] According to Shurtape, the USPTO routinely grants *inter partes* reexamination requests in order to avoid refunding the $7,970.00 filing fee to the party requesting reexamination. *See* 37 C.F.R. § 1.26(c).

7

likewise tends to weigh in favor of Shurtape.

## IV.

For all of these reasons, the Court finds that imposition of a stay in this instance would constitute undue prejudice to Shurtape, yet provide no guarantee that a stay will inure to the measurable benefit of the parties or the Court, such as a savings to the litigants or judicial efficiency.

**IT IS, THEREFORE, ORDERED THAT** Defendant 3M's Motion To Stay Pending *Inter Partes* Reexamination is hereby **DENIED.**

Signed: March 1, 2013

Richard L. Voorhees
United States District Judge